UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Abizahi Dominguez Rios,                         Civil No. 10-2192 (PJS/FLN)

          Petitioner,

v.                                              **REPORT AND RECOMMENDATION**

United States of America,

          Respondent.

---

Arthur R. Martinez for Petitioner.
Lola Velazquez-Aguilu, Assistant United States Attorney, for Respondent.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on a Petition for Writ of Habeas Corpus filed by Abizahi Dominguez Rios ("Petitioner") pursuant to 28 U.S.C. § 2241. (ECF No. 1.) Petitioner filed a memorandum challenging the existence of probable cause to support his extradition. (ECF Nos. 7, 9.) The Government submitted a response to the petition. (ECF No. 10.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons which follow, this Court recommends that Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1) be **DENIED**.

## I. BACKGROUND

Petitioner has been charged in the State of Morelos, Mexico, with aggravated homicide. (ECF No. 10, Ex. 1 at 3.) The Seventh Judicial District of Jonacatepec, Morelos, Mexico issued a warrant for his arrest on November 12, 2008. (*Id.* at 3 and 5.) On April 15, 2010, United States Magistrate Judge Jeanne J. Graham held an extradition hearing pursuant to 18 U.S.C. § 3184. (*Id.* at 1.) At the hearing, the court received three exhibits into evidence. (*Id.* at  4.)

In her Certification of Extraditability and Order, Magistrate Judge Graham summarized the evidence before her as follows:

> Omar Dominguez Rios ("Omar") is Rios' brother. On August 23, 2008, Omar repeatedly stabbed Juan Dominguez Moctezuma ("Moctezuma") while Rios encouraged Omar and prevented bystanders from interfering. Moctezuma later died from the injuries he sustained.
> An eyewitness to the incident, Mario Sanchez Torres ("Torres"), told the Mexican authorities that Omar and Rios were riding their horses through town, when they passed by Moctezuma walking on the street. Omar challenged Moctezuma to a fight, retrieved an object from his saddle, and beat Moctezuma until he fell to the ground. Omar then stabbed Moctezuma several times, while Rios said, "Fuck him up." When a bystander named Uri tried to separate them, Rios pulled out a firearm and said he would kill Uri if he interfered. Torres left the scene and called the police. Torres later identified Rios in a photograph during a formal identification proceeding on March 20, 2009. Torres told the police that he has known Rios since he was a small child, and that although Rios lived in the United States, he frequently visited his family in Mexico. Another witness, Gamaliel Barrera Acevedo ("Acevedo"), did not see the actual assault, but confirmed to police that he had seen Omar and Rios running from the scene of the crime on the night of August 23, 2008.

(*Id.*)

Ultimately, Magistrate Judge Graham determined that aggravated homicide constitutes an extraditable offense and that the evidence of criminality presented by the Government was sufficient to sustain the Mexican charge of aggravated homicide against Petitioner; she therefore certified Petitioner's extraditability to the Secretary of State. (*Id*. at 1-9.)

In the instant action, Petitioner asserts that probable cause does not exist to support the charge against him. (ECF Nos. 7, 9.) He further requests, based on newly submitted witness statements including a recantation by eyewitness Torres, that the Court "re-open" his extradition hearing. (*See* ECF Nos. 1, 7, 9.)

## II.   STANDARD OF REVIEW

Collateral review of a finding of extraditability is possible only through a writ of habeas corpus. *In re Assarsson*, 687 F.2d 1157, 1159 (8th Cir. 1982). The habeas corpus proceedings are

limited in scope and are "not a means for rehearing what the magistrate already has decided" pursuant to the extradition hearing. *See United States v. Wiebe*, 733 F.2d 549, 552 (8th Cir. 1984), citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).

> On collateral review by habeas corpus, the Court is not permitted to inquire beyond whether (1) the extradition judge had jurisdiction to conduct extradition proceedings; (2) the extradition court had jurisdiction over the fugitive; (3) the treaty of extradition was in full force and effect; (4) the crime fell within terms of the treaty; and (5) there was competent legal evidence to support a finding of extraditability.

*Assarsson*, 687 F.2d at 1159. The final inquiry permits, "by a somewhat liberal extension" the reviewing court to determine "whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Wiebe*, 733 F.2d at 552, citing *Fernandez*, 268 U.S. at 312.

### III.   DISCUSSION

**A.   There Was Competent Legal Evidence Before Magistrate Judge Graham to Support a Finding of Petitioner's Extraditability.**

Petitioner has moved for reversal of the extradition order or, in the alternative, "to re-open." (ECF No. 1.) He makes no argument related to jurisdiction or the applicability of the extradition treaty; rather Petitioner argues only that the charge of aggravated homicide against him is not supported by probable cause. (ECF No. 9 ("[P]etitioner respectfully request[s] a hearing for the court to reconsider whether the petitioner should be subjected to Mexico where probable cause that he committed the offense does not exist."))

While an extradition hearing is not a trial on the merits, it serves "as a means of ensuring that probable cause exists to believe the person whose surrender is sought has committed the crime for which his extradition is requested." *Wiebe*, 733 F.2d at 553; *see also Castaneda v. United States*, 2005 WL 19457 at *3 (D. Minn. Jan. 3, 2005) ("The purpose of an extradition

hearing is to determine whether the Government has presented evidence supporting the finding that probable cause exists to believe the accused committed the crime charged."). The applicable probable cause standard for extradition proceedings requires "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id.*

In arguing that probable cause does not exist, Petitioner appears to challenge the competency of the legal evidence presented at the extradition hearing that Magistrate Judge Graham found supported a finding of extraditability. In rendering her decision, Judge Graham considered the three exhibits submitted by the Government and specifically mentioned the witness statements of Mario Sanchez Torres and Gamaliel Barrera Acevedo. (ECF No. 10, Ex. 1 at 4.) Magistrate Judge Graham appears to have further considered the criminal complaint (and presumably the charging decision of the Public Prosecutor) as well as the arrest warrant for Petitioner issued in the Mexican State of Morelos.[1] (*Id.* at 3.) Thus, Magistrate Judge Graham "relied on competent legal evidence to find probable cause to support the homicide charge against [P]etitioner." *See Castaneda*, 2005 WL 19457 at *3.

While the evidence before this Court in the instant action does not include any witness statement that make reference to Petitioner's having encouraged his brother to kill Moctezuma by specifically using the words "Fuck him up," Torres' initial statement (given to the Public Prosecutor) states that Petitioner "took out a firearm" and threatened to kill a bystander "if he intervened" (*see* ECF No. 10, Ex. 3 at 2), a fact upon which Magistrate Judge Graham relied in

---

[1] Although Magistrate Judge Graham made reference to these documents in her Certification of Extraditability and Order (ECF No. 10, Ex. 1 at 3), they do not appear to be part of the record now before the Court in the instant action.

4

finding probable cause existed to support the charge of aggravated homicide. Based on the totality of the evidence before her, Magistrate Judge Graham's determination that "there is evidence to support a finding of probable cause to believe that Rios is equally responsible for the crime" of aggravated homicide was not unreasonable. (*See* ECF No. 10, Ex. 1 at 8.)

To the extent Petitioner challenges Magistrate Jude Graham's finding that probable cause exists to support extradition, that argument is rejected. The Court finds that competent legal evidence before Magistrate Judge Graham warranted the conclusion that "there was reasonable ground to believe the accused guilty" and supported the finding of Petitioner's extraditability. *See Wiebe*, 733 F.2d at 552; *Assarsson*, 687 F.2d at 1159.

**B.     The New Statements Appear to Be Contradictory Evidence Best Left to the Trial Court in Mexico.**

Petitioner has submitted to this Court a "supplement" to his petition that consists of several third party statements that Petitioner contends should have been presented to the court during his extradition hearing. (ECF No. 3.) These statements consist of: a purported recantation by the sole eyewitness, Mario Sanchez Torres, stating, in relevant part, that he "never saw [Petitioner] taking a gun out or yelling at the other witnesses to not get involved in the fight;" a contradictory statement by Syndy Genis Omaña (who did not make a prior statement to the Public Prosecutor), stating, in relevant part, that he did not observe Petitioner "taking any weapons out or threatening anyone who was trying to stop the fight;" and several letters of recommendation attesting generally to Petitioner's good character. (ECF No. 8.) Citing this evidence and *Escobedo v. United States*, 623 F.2d 1098 (5th Cir. 1980), Petitioner claims he is entitled to a new hearing "to determine if there are reasonable grounds to believe the accused is guilty." (ECF No. 9.)

"The range of evidence that a defendant may introduce as to probable cause at an extradition hearing is limited." *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006). A defendant at an extradition proceeding may offer evidence that tends to explain the Government's case of probable cause; he is not permitted, however, to introduce evidence on the issue of guilt or innocence—i.e. evidence that contradicts the demanding country's proof. *See e.g. Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978); *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006), citing *Barapind v. Enomoto*, 360 F.3d 1061, 1069 (9th Cir. 2004).

Moreover, the purpose of an extradition hearing is not to resolve issues concerning any inconsistencies of the evidence. *See Castaneda v. United States*, 2005 WL 19457 at *3 (D. Minn. Jan. 3, 2005). "The proper forum for raising facts contradicting the requesting country's proof, certain defenses and issues surrounding witness credibility, bias, or motive is not the extradition proceeding but Petitioner's trial in Mexico." *Id.*, citing *Wiebe,* 733 F.2d at 553 n.4; *Collins v. Loisel*, 259 U.S. 309, 315-16 (1922); *In re Locatelli*, 468 F. Supp. 568, 573-74 (S.D.N.Y. 1979); *Matter of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978).

The statements submitted to this Court by Petitioner "do not explain the [G]overnment's evidence, rather they tend to contradict or challenge the credibility of the facts implicating [P]etitioner" in the crime. *See Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981). The statements are, therefore, more akin to contradictory evidence than explanatory evidence. *See Barapind*, 360 F.3d at 1069 ("The general rule is that evidence that explains away or completely obliterates probable cause is admissible, where evidence that merely controverts the existence of probable cause is not."); *Eain*, 641 F.2d at 511 ("An accused in an extradition hearing has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary

6

trial, but only to offer evidence which explains or clarifies that proof."). Given that questions of credibility are reserved for the fact-finder at trial, the contradictory statements are matters to be considered at the trial, not the extradition hearing. *See Eain*, 641 F.2d at 511-12.

Additionally, the Government disputes the reliability of Torres' recantation and the legal significance of the new statements.[2] The Court notes that Torres' recantation statement lacks indicia of reliability as it was not made under oath. *Cf. In the Matter of the Extradition of Contreras*, 800 F. Supp. 1462, 1469 (S.D. Tex. 1992) (admitting recantation evidence where "the substance and circumstances of the recantation indicate[d] that it ha[d] more indicia of reliability than the original accusations"). Thus, any inconsistencies or credibility issues related to Torres' original statement and his alleged recantation should be resolved by the trial court. *See Castaneda*, 2005 WL 19457 at *3 ("The proper forum for Petitioner to challenge any alleged falsity or inconsistency of the evidence offered by the Government is at his trial in Mexico.")

That the alleged recantation and other statements were not included in the record before Magistrate Judge Graham at the extradition hearing does not defeat a finding of probable cause that Petitioner committed the offense for which extradition is sought. *See Castaneda*, 2005 WL 19457 at *3. Given the applicable standard of review, this Court concludes that the evidence before Magistrate Judge Graham was sufficient to warrant a finding that there was reasonable ground to believe Petitioner is guilty of aggravated homicide and that she properly discharged her role in making that finding. *See Castaneda*, 2005 WL 19457 at *3; *see Wiebe*, 733 F.2d at 552.

---

[2] The Government argues that, while "Torres' original statements were made under oath, to the Public Prosecutor, and were made part of the criminal file . . . [,] [t]he alleged recantation, in stark contrast, bares no indicia of reliability as it was not made before a competent legal authority, was not made under oath, is not part of the criminal record in Mexico, and, along with the other proffered documents, is 'legally inexistent.'" (ECF No. 10 at 12.)

7

Petitioner is, therefore, not entitled to habeas relief pursuant to 28 U.S.C. § 2241, and his request for a new hearing is rightfully denied.

## IV.   RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1) be **DENIED**;

2) This matter be **DISMISSED WITH PREJUDICE**; and

3) **JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: February 24, 2011         *s/ Franklin L. Noel*
                                 FRANKLIN L. NOEL
                                 United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 10, 2011**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.